AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

FILED
MAY 19 2022


CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

| United States of America | ) |
|---|---|
| v. | ) |
| Adhemar Castaneda Becerril | ) Case No. |
|  | ) |
|  | ) CR-22 70662 MAG |
|  | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __May 19, 2022__ in the county of __Santa Clara__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(B) | Possession with intent to manufacture, distribute, or dispense 50 grams or more of a mixture or substance containing methamphetamine |

This criminal complaint is based on these facts:

See Affidavit of SA Matthew Esposito, attached hereto and incorporated herein by reference.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Matthew Esposito, a Special Agent, DEA
*Printed name and title*

Approved as to form __Michael G. Pitman__
                    AUSA    MP

Sworn to before me by ~~telephone~~.

Date: __5/19/2022__

_____
*Judge's signature*

Nathanael M. Cousins, U.S. Magistrate Judge
*Printed name and title*

City and state: __San Jose, CA__

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Matthew Esposito, a Special Agent of the Drug Enforcement Administration ("DEA"), being duly sworn, depose, and say:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a DEA Special Agent currently assigned to the San Jose Resident Office. As a Special Agent with the DEA, my investigations focus on large-scale narcotic offenders. I have been employed by the DEA since April 2019. I successfully completed a sixteen-week DEA Basic Agent Training Academy at the DEA Academy in Quantico, Virginia. This training included instruction in the investigation of federal drug violations, including, but not limited to 21 U.S.C. §§ 841 and 846. This training included several hundred hours of comprehensive, formalized instruction in, among other things, basic narcotics investigations, drug identification, detection, interdiction, United States narcotic laws, financial investigations and money laundering, identification and seizure of drug related assets, undercover operations, and electronic and physical surveillance procedures.

2. During my employment with the DEA, I have conducted numerous narcotics investigations and authored affidavits in support of search warrants and criminal complaints against individuals who have illegally purchased, trafficked, or possessed narcotics.

3. This affidavit is in support of a complaint charging Adhemar CASTANEDA Becerril ("CASTANEDA") with violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii), possession with intent to manufacture, distribute, or dispense 50 grams or more of a mixture or substance containing methamphetamine, in the Northern District of California on May 19, 2022.

4. The statements contained in this affidavit are based on my own training, experience, and personal involvement in this investigation, as well as information relayed to me by other law enforcement officers involved in the investigation. Because this affidavit is

1

submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me that supports probable cause. Rather, I have set forth those facts that I believe are sufficient to support the issuance of the requested arrest warrant.

## STATEMENT OF PROBABLE CAUSE

5. In October 2020, a DEA Confidential Source ("CS-1")[1] stated Vicente ORTEGA Jr. ("ORTEGA Jr.")[2] could sell kilogram quantities of methamphetamine to CS-1 and provided telephone number 669-293-7080 ("ORTEGA Jr. Phone") for ORTEGA Jr. On January 15, 2021, under the direction of agents, CS-1 purchased approximately one-half kilogram of methamphetamine from ORTEGA Jr. in San Jose, California.

6. In March 2021, under the direction of agents, CS-1 introduced CS-2 ("CS-2")[3] to ORTEGA Jr. CS-1 informed ORTEGA Jr. that CS-2 wanted to make similar purchases from ORTEGA Jr., and CS-1 asked if ORTEGA Jr. was okay with CS-2 contacting ORTEGA Jr. through ORTEGA Jr. Phone. ORTEGA Jr. agreed. On March 30, 2021, at the direction of

---

[1] CS-1 has a criminal record which includes the following: (1) CS-1 was convicted of 1st degree robbery; (2) CS-1 was detained for transportation of narcotics for sale and released; (3) CS-1 has been convicted of crimes of violence to include domestic abuse; (4) CS-1 currently has a case pending in Santa Clara County for domestic abuse, PC 273.5(A) (CA); Currently CS-1 is still cooperating in exchange for monetary benefits and has been paid a total of approximately $1,500 by DEA after being signed up as an informant in 2020. Agents believe CS-1 has supplied information that is truthful (that is, the information was supplied without apparent deception and subject to the apparent limits of this informant's knowledge). To date, agents have been able to independently corroborate CS-1's information.

[2] On December 9, 2020, SA Ty Dollison showed CS-1 a photograph of Vicente ORTEGA Jr. and CS-1 confirmed that it was ORTEGA Jr.

[3] CS-2 has a criminal record to include traffic offenses and possession of a controlled substance for sale. CS-2's most recent arrest was in 2016 for possession w/intent to distribute; which is still pending sentencing. Currently, CS-2 is cooperating in exchange for credit towards his/her pending case. CS-2 has been a confidential source since 2016 and has supplied information that is believed to be truthful on several cases and that information has been independently corroborated by agents.

agents, CS-2 purchased approximately one-half kilogram of methamphetamine from ORTEGA Jr. in San Jose, California.

7. On June 9, 2021, CS-2 purchased approximately one kilogram of methamphetamine from ORTEGA Jr. in San Jose, California. Toll analysis showed ORTEGA Jr. was in contact with 408-590-9072, used by Victor NEVAREZ ("NEVAREZ's Phone"),[4] in advance of the June 9th transaction.

8. On February 16, 2022, the Honorable Vince Chhabria, United States District Judge for the Northern District of California, issued an amended order (CR 22 90148-MISC-VC) authorizing the interception of wire communications over NEVAREZ Phone for a period of thirty (30) days. Interceptions began on February 16, 2022, and ended on March 12, 2022.

**February 16, 17, & 22, 2022: Drug-Related Communications between NEVAREZ and CASTANEDA**

9. On February 16, 2022, at approximately 6:54 p.m., NEVAREZ Phone, used by NEVAREZ, received a phone call from telephone number (408) 915-1124, used by CASTANEDA[5] ("CASTANEDA Phone"). The call was intercepted and monitored (call #34). During the call, CASTANEDA asked NEVAREZ how things were going. NEVAREZ answered that he was almost done with it. CASTANEDA stated that he was not able to move anything. NEVAREZ responded that the past few days had been slow. CASTANEDA stated that he was

---

[4] Based on my training and experience, and conversation with other agents, I believe NEVAREZ is the user of NEVAREZ's Phone based on information including surveillance of NEVAREZ and location data for NEVAREZ's Phone during September 22, 2021.

[5] On March 4, 2022, agents identified Adhemar CASTANEDA Becerril as the user of 408-915-1124 ("CASTANEDA Phone") based on GPS location data of CASTANEDA Phone and the physical location of CASTANEDA between approximately 10:26 a.m. and 1:15 p.m. During that time period, Palo Alto Police Department officers spoke with CASTANEDA, who identified himself as Adhemar CASTANEDA Becerril, and agents confirmed CASTANEDA's identity using CASTANEDA's driver's license photograph and a previous booking photograph.

3

preparing to take his wife and son to Disney near Los Angeles. CASTANEDA stated that he would be out of town for one week, and asked if NEVAREZ wanted to stop by for another "fifteen." NEVAREZ stated that he would look into his budget and call CASTANEDA tomorrow. CASTANEDA said yes, and tomorrow at the latest because he wanted to leave by Friday. NEVAREZ stated alright and the call ended.

10. Based on my training, experience, and conversations with other agents, I believe that NEVAREZ and CASTANEDA were discussing NEVAREZ's current stock of narcotics (almost done with it), and went on to discuss the slow pace of drug sales over the last few days (not able to move anything...past few days have been slow). CASTANEDA asked NEVAREZ if he needed to stop by and purchase a quantity of narcotics (stop by for another fifteen). NEVAREZ stated that he would have to make sure he had the money to purchase the narcotics and that he would call CASTANEDA the following day with an answer (look into his budget). Further, I believe that this call shows CASTANEDA maintained a stock or "stash" of narcotics at a particular location (i.e. asking if NEVAREZ wanted to stop by) and had previously supplied NEVAREZ with narcotics (another fifteen).

11. On February 17, 2022, at approximately 4:39 p.m., NEVAREZ Phone, used by NEVAREZ, placed an outgoing call to CASTANEDA Phone, used by CASTANEDA. The call was intercepted and monitored (call #37). During the call, NEVAREZ stated that yes, he wanted to get some. CASTANEDA stated that he was heading out for Disneyland the next day and asked if NEVAREZ wanted to stop by early. NEVAREZ stated that he could hold off a bit, and asked for a call back once CASTANEDA returned.

12. Based on my training, experience, and conversations with other agents, I believe that NEVAREZ ordered the quantity of drugs discussed in call #34 from CASTANEDA. CASTANEDA asked if NEVAREZ wanted to stop by early the next morning to pick the drugs

4

up, but NEVAREZ said that he would wait until CASTANEDA returned from Disneyland.

13. On February 22, 2022, at approximately 9:35 p.m., NEVAREZ Phone, used by NEVAREZ, received an incoming call from CASTANEDA Phone, used by CASTANEDA. The call was intercepted and monitored (call #133). CASTANEDA stated that he was arriving home from work. NEVAREZ responded that "Ranita" had told him that CASTANEDA might have been working. NEVAREZ asked what time would be good to drop by CASTANEDA's place early tomorrow morning. NEVAREZ said that he could meet at the same time, and that traffic would be good, and NEVAREZ could just follow the flow of traffic. NEVAREZ asked to meet CASTANEDA around 7:30 a.m., and CASTANEDA asked to meet at 6:30 a.m., because CASTANEDA needed to be at an office in San Jose by 8:00 a.m.

14. Based on agents' training, experience, and conversations with other agents, agents believe that CASTANEDA told NEVAREZ that he was just getting home from drug trafficking activities ("work" is a commonly-used code word for narcotics). NEVAREZ responded that "Ranita" (as "Rana" is a known alias of Jamie ORTIZ Solorio, and based on the investigation in this case, agents believe that "Ranita" was a reference to ORTIZ) had told NEVAREZ that CASTANEDA might have been working. NEVAREZ and CASTANEDA went on to discuss what time to meet for NEVAREZ to pick up the narcotics, ultimately agreeing on 6:30 a.m. the following morning.

15. On February 11, 2022, the Honorable Nathanael Cousins, U.S. Magistrate Judge of the Northern District of California, signed court order CR-22-70181-NC reauthorizing GPS tracking of a white Subaru Legacy bearing California license plate 8FZE399. Throughout the investigation, agents on surveillance have observed that this Subaru has been NEVAREZ's primary method of transportation.

16. On the morning of February 23, 2022, agents received GPS location data from a

tracker placed on the Subaru. At approximately 6:30 a.m., agents received data indicating that the Subaru had left NEVAREZ's residence in San Jose, California. The Subaru traveled South to Gilroy, where it pulled into an alley south of E 6th Street, Gilroy, California, in between Forest Street and Alexander Street at approximately 7:01 a.m. The Subaru appeared to park in the area of CASTANEDA's residence (as described further below) in Gilroy, California ("CASTANEDA Residence"). At approximately 7:25 a.m., agents received GPS location data indicating that the Subaru was traveling Southbound through the alley. The Subaru left Gilroy, and traveled directly to NEVAREZ's residence at the same location San Jose, California, arriving at approximately 8:06 a.m.

17. Based on my training, experience, and conversations with other agents, I believe that NEVAREZ traveled from his residence in San Jose to Gilroy to meet with CASTANEDA and pick up the narcotics discussed in calls #34 and #37. NEVAREZ remained in Gilroy for approximately 25 minutes before returning directly to his residence. Traveling at that time of day allowed NEVAREZ to travel back to San Jose with the narcotics in morning rush-hour traffic, giving NEVAREZ a feeling of security and protection from law enforcement.

**March 1, 2022: Drug-Related Communications Between NEVAREZ And CASTANEDA**

18. On March 1, 2022, at approximately 8:50 p.m., NEVAREZ Phone, used by NEVAREZ, received an incoming call from CASTANEDA Phone, used by CASTANEDA. The call was intercepted and monitored (call #255). During the call, CASTANEDA stated that he was just getting out of work and was on his way home. NEVAREZ said okay, and asked what time he should come over. CASTANEDA stated that he did not think that it could get done by tomorrow morning, and asked NEVAREZ if it was urgent. NEVAREZ stated yes, because they did not have any. CASTANEDA stated that in that case, he could leave it outside for NEVAREZ to come and grab. CASTANEDA stated that he could leave them in the tent or he

6

could leave a bag in the little gray car and NEVAREZ could leave the rest of the stuff there. CASTANEDA further advised NEVAREZ that he could open the gate and come in.

19. On March 1, 2022 at approximately 10:33 p.m., NEVAREZ Phone, used by NEVAREZ, placed an outgoing call to CASTANEDA Phone, used by CASTANEDA. The call was intercepted and monitored (call #256). During the call, During the call, NEVAREZ asked CASTANEDA what was going on with Rana ("Rana" is a known alias of ORTIZ's). CASTANEDA said that Rana just called to confirm that NEVAREZ was going to meet with CASTANEDA early tomorrow. NEVAREZ said that Rana asked him about the "loose stuff," and CASTANEDA advised that he is going to take that back. NEVAREZ told CASTANEDA that Rana instructed CASTANEDA to only give Rana two nine hundred. CASTANEDA questioned, "Not everything?" NEVAREZ answered no, that NEVAREZ already has a portion and that NEVAREZ believes that Rana needs the rest for someone else. NEVAREZ said that he would drop by around seven.

20. Based on my training, experience, and conversations with other agents, I believe that, during these calls, NEVAREZ and CASTANEDA were discussing and detailing a drug pickup. CASTANEDA asked NEVAREZ about urgency because he did not think he could get it done until the morning. This appears to be a reference to the process of CASTANEDA manufacturing liquid methamphetamine into crystal methamphetamine for sales. NEVAREZ told CASTANEDA that it was urgent because his buyer was out of drugs (he doesn't have any), and CASTANEDA responded that even though he had to leave for work early, he would conceal the drugs in a location accessible to NEVAREZ for pickup (he could leave it outside for NEVAREZ to come grab…in the tent or…little gray car). CASTANEDA further advised that NEVAREZ could leave the payment for the drugs in the stash location (NEVAREZ could leave the rest of the stuff there), and that NEVAREZ could pull his vehicle past any fences or gates,

7

close to the stash location (he could open the gate and come in). During the second call, CASTANEDA advised NEVAREZ that an individual – believed to be ORTIZ based on knowledge of this investigation, interceptions with ORTIZ, and use of ORTIZ's moniker – called him to confirm that NEVAREZ was picking up the drugs the morning of March 2, 2022. CASTANEDA told NEVAREZ that at ORTIZ's direction, he was going to take back drugs of perceived lesser quality (ORTIZ asked CASTANEDA about the "loose stuff," and CASTANEDA advised that he was going to take it back). NEVAREZ stated that at ORTIZ's direction, he was only going to pick up two pounds (only two nine-hundred). When CASTANEDA questioned that, NEVAREZ responded that he (NEVAREZ) believed that ORTIZ had earmarked the drugs for another buyer or purpose (NEVAREZ believes that ORTIZ needs the rest for someone else).

21. On the morning of March 2, 2022, agents established surveillance in the area of NEVAREZ's residence in San Jose, California. At approximately 6:45 a.m., agents observed NEVAREZ, operating his white Subaru Legacy, leave his residence. Agents maintained surveillance of NEVAREZ as he traveled to Gilroy, California. At approximately 7:21 a.m., agents observed NEVAREZ pull into the alley south of 6th Street, between Forest Street and Alexander Street. Agents observed NEVAREZ reverse his car past a wooden fence's gate onto the property of CASTANEDA Residence. After a short time, agents observed NEVAREZ moving around near the open, driver's side door of the Subaru. At approximately 7:26 a.m., agents observed the Subaru leave the area. Surveillance was maintained on NEVAREZ as he traveled directly back to his residence. Once there, agents observed NEVAREZ open the rear doors of the Subaru before walking to the back yard of the residence. Agents could not confirm if NEVAREZ was carrying a package due to an obscured line of sight.

### May 19, 2022: Search of CASTANEDA's Residence in Gilroy, California

22. On May 17, 2022, the Honorable Nathanael Cousins, U.S. Magistrate Judge of the Northern District of California, signed a search warrant (CR 22-70651-NC) authorizing the search of CASTANEDA Residence, which is in Gilroy, California, is within the Northern District of California.

23. On May 19, 2022, at approximately 6:03 a.m., DEA Special Agents executed the search of CASTANEDA Residence. At that time, CASTANEDA Residence was occupied by the CASTANEDA, an adult female, and three juveniles. During the search, in a laundry room on the floor underneath a table, agents found a plastic saucer pan with a dark liquid substance inside. The dark liquid substance tested presumptive positive of methamphetamine, which is a Schedule II controlled substance. The wall of the saucer pan contains a white crystalline substance. The dark liquid was subsequently weighed in a thin plastic evidence bag, with a gross weight of 2650.7 grams.

24. On the table, agents located a wallet containing a United States passport card for "Adhemar CASTANEDA-Becerril" and a photo of CASTANEDA. Also in the wallet, was a California driver license for "Adhemar CASTANEDA-Becerril." A further search of the room yielded two bottles of acetone,[6] a scale, a package sealer, tubing, strainers, and two orange water coolers. One of the water coolers contains residue of a white crystalline substance. The white crystalline substance tested presumptive positive for methamphetamine.

25. Based on my training and experience, and conversation with other agents, I know it is common for narcotics dealers to import methamphetamine in liquid form to clandestine conversation labs. I know approximately one gallon of liquid methamphetamine will produce

---

[6] One bottle of acetone is half full and the second acetone bottle is nearly empty.

9

approximately 4 to 6 pounds of crystal methamphetamine. Further, I know it is common for conversation labs to contain tubing, buckets, and acetone that is used in the process of converting liquid methamphetamine to crystal methamphetamine. Further, I know it is common for narcotics distributors to own scales and packaging materials that they use to measure narcotics that will then be sold to other individuals.

## CONCLUSION

26. Based on the above information, I hereby assert that probable cause exists to believe that CASTANEDA violated 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii), possession with intent to manufacture, distribute, or dispense 50 grams or more of a mixture or substance containing methamphetamine, in the Northern District of California on May 19, 2022. I therefore respectfully request that a warrant be issued for CASTANEDA's arrest.

_____
MATTHEW P. ESPOSITO
Special Agent
Drug Enforcement Administration

Sworn to before ~~me over the telephone~~ and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 19 day of May ~~2020.~~ 2022

_____
HONORABLE NATHANAEL M. COUSINS
UNITED STATES MAGISTRATE JUDGE

AO 257 (Rev. 6/78)

| DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT |
|---|

BY: ☒ COMPLAINT  ☐ INFORMATION  ☐ INDICTMENT  ☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

FILED
MAY 19 2022
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

**— OFFENSE CHARGED —**

21 U.S.C. §§ 841(a)(1), and (b)(1)(B) – Possession with intent to manufacture, distribute, or dispense 50 grams or more of a mixture or substance containing methamphetamine

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: Maximum period of imprisonment: 40 years; Minimum period of imprisonment: 5 years Maximum supervised release term: Life Minimum supervised release term: 4 years Maximum fine: $5,000,000; and A mandatory special assessment of $100 per felony count

**— DEFENDANT - U.S —**

▶ Adhemar Castaneda Becerril

DISTRICT COURT NUMBER

CR-21 70662 MAG

**— DEFENDANT —**

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☒ On this charge
5) ☐ On another conviction   } ☐ Federal  ☐ State
6) ☐ Awaiting trial on other charges
   If answer to (6) is "Yes", show name of institution

Has detainer been filed? ☐ Yes  ☐ No   } If "Yes" give date filed

DATE OF ARREST ▶ Month/Day/Year  5/19/2022

Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year

**— PROCEEDING —**

Name of Complainant Agency, or Person (& Title, if any)

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE
} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
} MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form   STEPHANIE M. HINDS
☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   AUSA Michael G. Pitman

☐ This report amends AO 257 previously submitted

**— ADDITIONAL INFORMATION OR COMMENTS —**

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT   Bail Amount: NA

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:                   Before Judge:

Comments: